By the Court.
First it should be observed that the question in this case is not whether these claims shall be paid. That already has been determined in the affirmative. The sole question is whether payment shall be made by the Industrial Commission or by the company as a self-insurer.
It would seem that the answer to this controversy is found in the provisions of Sections 1465-72 and 1465-68, General Code, the first of which reads in part as follows:
“The State Liability Board of Awards shall disburse the state insurance fund to such employees of employers as have paid into said fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, wheresoever such injuries have occurred, and which have not been purposely self-inflicted, or to their dependents in case death has ensued.
“All employers electing directly to compensate their injured employees, in compliance with this act, shall pay to such injured employees, or to the dependents of employees who have been killed in the course of their employment, unless such injury or death of *610 such employee has been purposely self-inflicted, the compensation, and shall furnish such medical, surgical, nurse and hospital care and attention or funeral expenses as would have been paid and furnished by virtue of this act under a similar state of facts, by the State Liability Board of Awards out of the state insurance fund, in case said employer had paid the premium provided by this act, into said fund.”
Thus it is provided in unambiguous language that the Industrial Commission “shall disburse the state insurance fund to such employees of employers as have paid into said fund” and that “all employers electing directly to compensate their injured employees * * * shall pay to such injured employees, or to the dependents * * *, the compensation * * * as would have been paid * * * by the State Liability Board of Awards out of the state insurance fund, in case said employer had paid the premium provided by this act, into said fund.” In the first instance payment is to be made by the Industrial Commission and in the second by the employer.
And in Section 1465-68 appears the fallowing language to the same effect:
“Every employee mentioned in Section 1465-61, who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted, on and after January 1st, 1914, shall be entitled to receive, either directly from his employer as provided in Section 1465-69, or from the state insurance fund, such compensation for loss' sustained on account of such injury or death, and such medical, nurse and hospital services and medicines, and such amount of funeral expenses in case of death as provided by Sections 1465-79 to 1465-87 inclusive.” (Italics supplied.)
However, the relatrix insists that the provisions of these sections are modified by other statutes and by *611 rule XII of the Industria] Commission relating to the .surplus or catastrophe fund.
Section 1465-54, General Code, contains the following provision relating to a surplus:
“2. Ten per cent of the money that has heretofore been paid into the state insurance fund and ten per ■cent of all that may hereafter be paid into such fund .shall be set aside for the creation of a surplus until ■such surplus shall amount to the sum of one hundred thousand dollars ($100,000) after which time, whenever necessary in the judgment of the Industrial Commission to guarantee a solvent state insurance fund, a sum not exceeding five per cent of all the money paid into the state insurance fund shall be credited to such surplus fund.”
The Industrial Commission’s rule XII upon which the relatrix relies reads as follows:
“Rule XII
“Catastrophe Claims
“Should one accident result in the death of three or more employees of one employer, that portion of the .present valué, as of the date of injury, of the aggregate awards including the maximum funeral allowance of all the death claims from such accidents that is in excess of $15,000, shall be charged as a catastrophe cost against the statutory surplus fund.
“In a permanent total disability claim, that portion of the present value, as of the date of injury, of a compensation award (including an additional 10% for expected medical costs) that exceeds $15,000, shall be ■charged as a catastrophe cost against the statutory surplus fund.
“That portion of the cost of catastrophe claims not ■chargeable to the statutory surplus fund shall be ■charged to the employer’s account for merit rating.”
As a basis for this rule the relatrix relies upon Section 1465-55, General Code, which provides in part *612 that “the Industrial Commission of Ohio shall adopt rules and regulations with respect to the collection, maintenance and disbursements of the state insurance fund.” However, it is necessary to keep in mind the limitation of the controlling constitutional grant of legislative power in Section 35 of Article II of the organic law of this state that “for the purpose of providing compensation to workmen and their dependents * * * laivs may be passed establishing a state fund * * * and * * * determining the terms and conditions upon which payment shall be made therefrom * * *. (Italics supplied.) And, as stated by Chief Justice Nichols in the case of Reinholz, Gdn., v. Industrial Commission, 96 Ohio St., 457, 119 N. E., 129.
“In contemplation of both the statute and Constitution there is but one fund, and that is the state insurance fund.
“The constitutional amendment, Section 35, Article II, provides for the creation of but one fund. The so-called surplus fund is wholly of statutory creation^ and after all is only a part of the general fund.”
The relatrix contends that in the matter of payments from the statutory surplus neither the rule nor the statutes show a distinction between self-insurers and state risk employers or their employees. But whatever may be the implications of the rule, the basis for a substantive right must be found in the statutes enacted under the constitutional authorization that “laws may be passed * * * determining the terms and conditions upon which payment shall be made # * *.” Several legislative enactments do provide expressly for payment from the surplus in certain instances.
One of these is found in Section 1465-69, General Code, which provides that if a workman who has lost one member then loses the second with a resulting permanent total disability, a self-insurer is required to pay only the expenses and compensation incident to *613 the loss of the second member, whereas compensation for permanent total disability is paid from the surplus.
A second instance is seen in Section 1465-80, General Code, which provides that the Industrial Commission may by unanimous vote pay out of the surplus the cost of an artificial appliance to assist in the rehabilitation of an injured employee. The same section provides that a sum of $5,000 shall be transferred semiannually from the surplus to the vocational rehabilitation fund of the State Board of Vocational Education, State Department of Education. Likewise, in the last sentence of the last paragraph in that section it is provided that “the cost of all payments” to an employee who has changed his occupation to eliminate further exposure to silica dust “shall be charged to the surplus * * * and paid from such surplus.”
Still another instance is found in Section 1465-74, General Code, to the effect that a final judgment against a self-insurer shall entitle the claimant to have his compensation paid from the surplus.
Inasmuch as the General Assembly has exercised its legislative power by enacting express provisions specifying the purposes for which the surplus may be used, it is apparent that use for other purposes was not intended. Expressio unius est exclusio alterius.
The relatrix contends also that a distinction between self-insurers and state risk employers results in a denial of equal protection of the law. However, it is to be observed that self-insurers enjoy certain benefits denied to state risk employers, and' the premiums paid by the former are collected for the various purposes specified in the statutes.
It is the view' of the court that the demurrer to the petition must be sustained and the writ denied.

Writ denied.

Weygandt, C. J., Zimmerman, Bell, Williams, Turner, Matthias and Hart, JJ., concur.